**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1892-20

TROY SESSOMS,

    Petitioner-Appellant,

v.

DAVID VERNON, Vice
President for Human
Resources, MONTCLAIR
STATE UNIVERSITY,

    Respondent-Respondent.

_____

Submitted March 9, 2022 – Decided July 1, 2022

Before Judges Gilson and Gummer.

On appeal from the Board of Trustees, Montclair State University.

Christopher C. Roberts, attorney for appellant.

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Ryan J. Silver, Deputy Attorney General, on the briefs).

PER CURIAM

Petitioner Troy Sessoms appeals from a final decision of the Montclair State University Board of Trustees (Board), denying his request to reclassify his employment position. Because the Board's decision is supported by substantial credible evidence, is not arbitrary, capricious, or unreasonable, and did not violate his due-process rights, we affirm.

I.

Petitioner's employment with Montclair State University (MSU) began in June 2002. Petitioner worked in MSU's Division of Intercollegiate Athletics. His position had the functional title of "Equipment Manager." For compensation and other purposes, that position was classified generically as "Professional Services Specialist III" (PSS3). According to a June 2002 MSU job-description memorandum, petitioner as Equipment Manager had the following "major duties and responsibilities":

> Administration, organization and supervision of the athletic equipment operation.
>
> Training, supervision and evaluation of part-time employees and student staff.
>
> Administer and evaluate contracts for reconditioning and laundry services.
>
> Provide laundry services for athletic teams.
>
> Prepare and administer equipment operation budget.

2

Coordinate the purchase of equipment and supplies for 17 varsity sports.

Research vendors and cost saving methods for purchasing equipment.

Maintain an equipment inventory database.

Coordinate all equipment issues and returns.

Organize equipment inventory for efficient storage.

Coordination of lost equipment and equipment returns with the bursar's office.

Receive and distribute all equipment sent to the athletic department.

Serve as the administrator in charge for selected home athletic contests.

Attend and participate in departmental, conference and university-wide meetings related to duties and responsibilities.

Serve on departmental, university, conference, regional and national committees as requested.

Perform other duties as assigned.

In January 2020, petitioner applied for a reclassification of his employment position, seeking to change his functional title to "Assistant Athletic Director/Director of Equipment Services," which would result in a

generic title change to Assistant Director II.[1]  That change would entitle him to a higher salary.  Because MSU is a university of the State of New Jersey, see N.J.S.A. 18A:64N-2, and petitioner is a member of the American Federation of Teachers (AFT) Local 1904, his application for reclassification was governed by the terms of the agreement between the Council of New Jersey State College Locals, AFT, AFL-CIO and the State (State Agreement) and the Local Selected Procedures Agreement between MSU Administration and the MSU Federal of Teachers, Local 1904, AFT, AFL-CIO (Local Agreement).

In support of his application, petitioner submitted a "Justification Statement for Reclassification," in which he asserted the "scope" of his position had "changed significantly . . . ."  He contended he had become responsible for "direct supervision of equipment services" at a renovated athletic center, would be responsible for a maintenance building, had been supervising additional part-time and student employees, had an increased workload due to additional team practices and an increase in the football-team roster, was traveling with the

---

[1]  Petitioner initially indicated he was seeking to change his generic title to "Professional Services Specialist I."  MSU viewed him as seeking to change his generic title to "Assistant Director II" because his requested functional title, "Assistant Athletic Director/Director of Equipment Services," was consistent with the generic Assistant Director title range and not the generic Professional Services Specialist title range.

A-1892-20

football team to its away games, and had additional responsibilities due to increased staffing in the Athletic Department and compliance issues. In addition to the June 2002 job-description memorandum, petitioner also submitted a memorandum dated January 2020, listing the "major duties and responsibilities" of an "Assistant Athletic Director/Director of Equipment Services":

> Organize assigned work for staff employees, student assistants, and work study students, and develop appropriate methods for meeting goals and objectives for the equipment operations. This will include Panzer Athletic Center, Panzer Athletic Center Field House, and the Facilities Building/Athletic Center.
>
> Review and evaluate workload, develop and implement improved methods for equipment room staff and students, and equipment operations.
>
> Develop and recommend an appropriate budget for activities supervised through workshops, training sessions, and work schedules for staff employees and student employees.
>
> Analyze and interpret applicable principles, federal and/or state laws and regulations through establishing budget for federal student employees that are employed by [MSU], and prospective vendors who work with the Athletic Department through the [MSU] Procurement Department.
>
> Oversee the interview process of two part-time employee staff members and make recommendations concerning selection of staff.

A-1892-20

Supervise work of full-time assistants, and part-time and/or student aid through training sessions, workshops, and give recommendations and feedback on progress.

Monitor the work and/or staff, identify problem areas, and take steps necessary to affect improvement through meetings, and training sessions.

Establish liaison and coordinator responsibilities with other staff organizations, which includes the 17 varsity sports and the coaching staff of each individual sport as it relates to or impacts assigned equipment operation functions.

Prepare clear, technically sound, accurate, and informative reports containing findings, conclusions, and recommendations that include equipment operations, and the 17 varsity sports programs.

Attend and participate in meetings, or college events related to assigned responsibilities.

May serve on standing and ad hoc committees.

Prepare correspondence in the course of official duties.

Maintain established records and files.

Petitioner's immediate supervisor, intermediary line supervisor, and divisional vice president reviewed his application and did not support his request for reclassification. His intermediary line supervisor stated he "agree[d] with job duties but disagree[d] with title request." Pursuant to the Local Agreement, "[i]f there is a disagreement . . . concerning the duties being performed by the

6

employee" requesting an employment-position reclassification, the employee may request a Human Resources (HR) manager perform a desk audit "to determine exactly what duties are being performed." Petitioner asked someone in HR whether a desk audit would be conducted. Petitioner was later advised a desk audit had not been conducted because his intermediary line supervisor had agreed with petitioner's description of the job duties he was performing.

Pursuant to section 12.3.6 of the Local Agreement, HR staff member Zoila Rosario performed a "Reclassification Analysis." As stated in her May 29, 2020 written report, Rosario found petitioner had experienced "a small increase in his daily responsibilities outside his current job description, but not sufficient to warrant" reclassification. She characterized "the changes in his job duties" as being "volume oriented (for example more non-traditional practices or a higher football team roster), rather than increasingly complex duties." She concluded "[m]ost of the additional responsibilities would fall under 'perform other duties as assigned' included in his current job description," "[t]he new responsibilities highlighted in the request are consistent with a PSS3 position," and the requested reclassification was not warranted. She recommended "maintain[ing] the position's current classification at PSS3 . . . ."

In a July 30, 2020 letter, HR Vice President David Vernon advised petitioner HR's Classification and Compensation Unit had "concluded that the level and scope of your responsibilities are within your current classification and a reclassification is not merited at this time."

A month later, petitioner emailed MSU President Susan A. Cole and asked for her "input and feedback" regarding the decision not to reclassify his position. Cole forwarded his request to Vernon. In a September 1, 2020 email, Vernon sent petitioner a copy of Rosario's report and stated someone would contact him to schedule a meeting.

Pursuant to section 12.4.2 of the Local Agreement, if an employee has "issues with the reclassification decision, the final level of administrative review shall be the Vice President for [HR]." In his September 10, 2020 meeting with Vernon and in a subsequent letter, petitioner expressed concern about Vernon having executed the July 30, 2020 letter, contending it represented Vernon's "final decision." Accordingly, when petitioner appealed the denial of his reclassification request, the review of that decision was conducted by Cole, not Vernon.

In an October 6, 2020 letter, Cole advised petitioner she had found his "position [was] correctly classified and that [his] functional title [was]

appropriate." She concluded the "scope of [his] position and the level of [his] responsibilities have not changed in any significant way, nor has the scope of your authority." She pointed out the renovation of the maintenance building had not yet occurred and would not likely change the scope or level of his responsibilities and that the addition of staff generally in the Athletic Division and specifically under his supervision did not change the nature of his work. She summarized her decision as follows:

> [I]t is natural for some changes to occur in the work of employees in a growing institution, but these changes do not require the reclassification of every employee because enrollment grows, or staff increases, or buildings are built, or, conversely, because enrollment in one area declines, or staff declines or buildings are taken off-line. The fundamental nature of your position as Equipment Manager has not changed in any significant way, fits comfortably within the established parameters of the [PSS3] classification, and is classified in a manner consistent with other Intercollegiate Athletic personnel with positions of comparable scope and level of responsibilities.

Pursuant to section 12.5.1 of the Local Agreement, petitioner appealed Cole's decision to the Board. See also N.J.S.A. 18A:3B-6(b) (giving the "governing board of each public institution of higher education . . . authority over all matters concerning the supervision and operations of the institution including fiscal affairs, the employment and compensation of [non-civil-service]

9

staff") and -6(f) (giving governing boards "final authority to determine controversies and disputes concerning . . . personnel matters of [non-civil-service] employees").  In his petition of appeal, he asked the Board to "hear and determine" his appeal and did not request a transfer of the appeal to the Office of Administrative Law (OAL).  In his response to MSU's written response to his appeal, petitioner asserted the Board had jurisdiction to hear an issue he had raised but asked that his appeal be forwarded to the OAL if the Board was deemed not to have jurisdiction.

The Board appointed an appeals committee to consider petitioner's appeal. During a December 21, 2020 Board meeting, the committee orally recommended the Board find it had jurisdiction to hear the appeal, hear the appeal directly instead of referring it to the OAL, find no material facts were in dispute, and uphold the decision to deny petitioner's reclassification application because petitioner had "failed to demonstrate that [MSU] violated any of your due process or contractual rights or that your title is incorrectly classified."  The Board adopted the committee's recommendation and affirmed the denial of petitioner's reclassification petition.

In a December 28, 2020 letter to the Board's assistant secretary, petitioner pointed out he had had a right to respond to the committee's recommendation.

In an email sent the next day, MSU counsel advised petitioner of the committee's recommendation, that he had twenty days to respond to it, and that the Board would reconsider his appeal. In his response, petitioner requested for the first time that his appeal be submitted to the OAL.

The Board reconsidered petitioner's appeal during its February 12, 2021 meeting and voted to affirm the denial of his reclassification application. In a twenty-two page Final Administrative Decision, the Board spelled out its reasons for affirming the denial of petitioner's application and addressed the procedural arguments petitioner had raised in his administrative appeal. The Board posited "the essential question to be decided . . . is whether or not [petitioner's] present position is correctly classified, given his current responsibilities." In rendering its decision, the Board accepted petitioner's "own description of his work." It, therefore, concluded no material facts were in dispute and a desk audit was not needed to determine what job duties petitioner was performing. The Board concluded based on petitioner's description of how his job responsibilities had changed that he had "failed to demonstrate new or additional job duties, a change in scope of work, and/or a change in level of responsibility to a sufficient extent that his responsibilities no longer conformed to his current job description."

Pursuant to N.J.S.A. 18A:3B-6(f) and section 12.5.1 of the Local Agreement, petitioner submitted to us his appeal of the Board's decision. See N.J.S.A. 18A:3B-6(f) ("The final administrative decision of a governing board of a public institution of higher education is appealable to the Superior Court, Appellate Division . . . ."). On appeal, claimant argues the Board's findings are not supported by credible evidence and are arbitrary, capricious, and clearly erroneous. He also contends MSU violated his due-process rights by not granting his requests for a desk audit, a written report from HR, and a transfer of the matter to the OAL.

II.

The Board's decision is a final agency decision subject to our review. See N.J.S.A. 18A:3B-6(f); N.J. Educ. Facilities Auth. v. Gruzen P'ship, 125 N.J. 66, 73-73 (1991) (considering a state college as a state agency when deciding issue that does not raise academic-freedom concerns under the First Amendment or other concerns about educational independence from the State); Newman v. Ramapo Coll. of N.J., 349 N.J. Super. 196, 201-04 (App. Div. 2002) (analyzing decision of college's board of trustees as an agency decision). Thus, this appeal is governed by the same standard of review as an appeal of a decision by any other State agency.

A-1892-20

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). We give "[w]ide discretion . . . to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). We review legal questions de novo. Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 55 (2022). An agency's determination "is entitled to affirmance so long as the determination is not arbitrary, capricious, or unreasonable, which includes examination into whether the decision lacks sufficient support in the record or involves an erroneous interpretation of law." Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). "The burden of proving that an agency action is arbitrary, capricious, or unreasonable is on the challenger." Parsells v. Bd. of Educ. of the Borough of Somerville, ___ N.J. Super. ___, ___ (App. Div. June 6, 2022) (slip op. at 7).

Petitioner has not met his burden. Petitioner faults the Board for its ultimate conclusion. He does not – because he cannot – fault the Board for any

13

factual finding it made: the Board accepted petitioner's description of his work. Based on that description, the Board reasonably concluded that although petitioner's workload may have increased, the fundamental nature and scope of his work had not changed "to a sufficient extent" to merit a reclassification of his position. Comparing petitioner's description of his current job duties with the 2002 description of the duties of an equipment manager, we perceive no basis to disturb the Board's decision.

Petitioner faults the Board's decision on procedural grounds. He complains no desk audit was performed, no written rationale for Rosario's recommendation to deny his application was provided, and his appeal was not transferred to the OAL. His arguments on those issues have no merit.

Pursuant to section 12.3.3 of the Local Agreement, an applicant may request a desk audit when "there is a disagreement . . . concerning the duties being performed . . . ." The purpose of the desk audit is "to determine exactly what duties are being performed . . . ." Because petitioner's intermediary line supervisor had agreed with petitioner's description of his job duties and the Board ultimately accepted petitioner's description, no disagreement concerning his job duties existed and a desk audit was not warranted.

14

Petitioner in fact received a copy of Rosario's written report on her Reclassification Analysis. Vernon summarized Rosario's findings in his July 30, 2020 letter. According to petitioner, he requested a copy of her written rationale on August 3, 2020. Vernon emailed it to him on September 1, 2020. Petitioner admitted receiving it in a document he submitted in support of his initial appeal.

Section 12.5.1 of the Local Agreement provides that reclassification disputes are resolved by appeal pursuant to N.J.S.A. 18A:3B-6(f). N.J.S.A 18A:3B-6(f) and section 12.5.1 expressly give the Board "final authority to determine controversies and disputes concerning . . . personnel matter of [non-civil-servant] employees." N.J.S.A. 18A:3B-6(f) provides "[a]ny matter arising under this subsection may be assigned to an administrative law judge, an independent hearing officer or to a subcommittee of the governing board for hearing and initial decision by the board . . . ." (emphasis added). We perceive no error or deprivation of due-process rights in the Board deciding the appeal instead of transferring it to the OAL, especially when no material facts were in dispute, petitioner in his Petition of Appeal expressly asked the Board to "hear and determine" his appeal, and petitioner did not request a transfer to the OAL

A-1892-20

until after he learned the committee had recommended the Board affirm the denial of his reclassification application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1892-20